IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL P. RIZZO, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NUTANIX, INC. *et al.*, | : | No. 20-5140 |
| *Defendants* | : | |

MEMORANDUM

PRATTER, J.                                                      MARCH 31, 2021

Samuel Rizzo alleges that his former employer defamed him when management discussed alleged concerns with Mr. Rizzo's client interacting skills. Nutanix, Inc., Michael Granit, and Phillip Spear move to dismiss the sole count in the complaint on the grounds that it is time barred, fails to state a claim, and was not procedurally exhausted before the EEOC. As to the statute of limitations, Mr. Rizzo concedes the complaint was filed over a year after the allegedly defamatory statements were published but he maintains that the so-called discovery rule salvages his complaint. For the reasons stated below, the Court grants the motion to dismiss.

BACKGROUND AND PROCEDURAL HISTORY

Samuel Rizzo is a former employee of Nutanix, an information technology company that provides cloud services to its customers. One of its customers is Ernst and Young. Mr. Rizzo was assigned to the EY account as a program manager. Doc. No. 1. (Compl.) ¶ 1.

Mr. Rizzo alleges that his manager, Michael Granit, called him on October 3, 2019 to inform him that he was being removed as program manager of the EY account. As Mr. Rizzo recounts, Mr. Granit explained that a September 26, 2019 email Mr. Rizzo had sent to EY caused "extreme offense" to the client and that EY requested that Mr. Rizzo be removed from the account. Compl. ¶¶ 9-11. Mr. Granit relayed that EY saw the email as questioning the client's decision-

1

making. *Id.* ¶ 11. Mr. Rizzo does not deny sending EY an email on that date, but he disputes EY's alleged reaction. *Id.* ¶ 18.

On that call, Mr. Granit allegedly also informed Mr. Rizzo that the Sales Global Account Manager, Philip Spear, disclosed the September 26 email to Nutanix executive management. *Id.* ¶ 15. Mr. Spear was the one to whom EY supposedly complained. *Id.* ¶ 11. There are no allegations that Nutanix discussed the matter further with EY or with anyone else outside the company. Mr. Rizzo disputes both that Mr. Spear elevated the email internally and that EY complained to Mr. Spear in the first place. *Id.* ¶ 18. The complaint reiterates that Mr. Rizzo learned about the "false accusations" relating to his September 26 email on "the evening of October 3, 2019." *Id.* ¶ 19.

Mr. Rizzo's employment with Nutanix was terminated roughly two weeks later on October 15, 2019. He alleges that the decision to remove him from the EY account and to eventually terminate his employment was pretextual. He believes that Mr. Spear viewed him as a nuisance and was looking for any reason to terminate his employment.

Mr. Rizzo filed this lawsuit on October 30, 2020, alleging only a count of defamation under Pennsylvania law.[1] He also filed a charge of discrimination with the EEOC in December 2019, which remains pending. Doc. No. 10 at 10. Defendants moved to dismiss the complaint in its entirety. The Court invited the parties to submit supplemental briefing addressing the statute of limitations. Oral argument was held recently, during which the parties focused on the "gating" issue of the statute of limitations. Following oral argument, the Court again invited the parties to file supplemental submissions.

---

[1] The complaint incorrectly cites to 42 Pa. C.S. §5523(1), which is the statute of limitations for a libel and slander action, rather than to § 8343(a), which lists the required elements for a defamation claim. Mr. Rizzo was proceeding *pro se* at the time he filed the Complaint but has since secured representation. The erroneous citation is of no significance to the Court's decision.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To provide defendants with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts in the Third Circuit conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and are disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

At the pleading stage, the Court accepts "all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the Court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court need not ignore or discount reality. Nor must the Court "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court accepts as true all reasonable inferences emanating from the allegations and views those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

Technically, "Federal Rule of Civil Procedure 8(c) requires that a defendant plead an affirmative defense, such as a statute of limitations, in his answer." *Robinson v. Johnson*, 313

F.3d 128, 134 (3d Cir. 2002). However, the Third Circuit Court of Appeals permits a defendant to raise an affirmative defense, including a statute of limitations defense, in a Rule 12(b)(6) motion when it is clear from the face of the complaint that the claim is time-barred. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson*, 313 F.3d at 134-35) (discussing the "Third Circuit Rule").

## DISCUSSION

Defendants move to dismiss the complaint with prejudice. They advance three arguments. First, Defendants argue that the complaint is barred by Pennsylvania's statute of limitations for defamation claims. Second, they contend that Mr. Rizzo has failed to exhaust his administrative remedies before the EEOC. Last, they argue the complaint fails to state a claim because the statements supposedly at issue could not be understood as defamatory by its recipients and were privileged among Nutanix executive management, and Mr. Rizzo has not alleged publication outside of the company. Because the statute of limitations is a gating issue, the Court addresses it first.

Under Pennsylvania law, an action for libel or slander must be commenced within one year. 42 Pa. C.S. § 5523(1).[2] The one-year clock starts to run from the date of publication. *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012) (applying Pennsylvania law). At oral argument, in response to repeated inquiry from the Court, Mr. Rizzo's counsel explained that the allegedly defamatory statements are the written correspondence between Mr. Granit and Mr. Spear exchanged on September 26, 2019 (the "Spear emails"). In his post-argument submission, he clarifies that he asserts separate causes of action for the written and oral statements allegedly

---

[2] Because the Court is sitting in diversity, it applies Pennsylvania law to the defamation claim. The parties do not dispute that Pennsylvania law applies.

defaming him. Doc. No. 24 at 5. For the reasons that follow, the same analytic framework applies to both claims.

Although he did not see the emails at issue that discuss his performance until February 2020, Mr. Rizzo unequivocally alleges that he learned about the alleged client complaint from EY and Nutanix's response, including his resulting demotion, on October 3, 2019. Construing the Complaint liberally (given Mr. Rizzo's *pro se* status at the time), the latest date of publication was October 15, 2019—the date his employment with Nutanix was terminated. In supplemental briefing, Mr. Rizzo confirms that the alleged defamation was "repeated throughout upper management all the way through the date of termination." Doc. No. 24 at 7. So, in order to be timely, he had to assert his defamation claims no later than October 15, 2020. Instead, the Complaint was filed on October 30, 2020, outside of the statute of limitations.

Mr. Rizzo argues that the complaint is nevertheless timely because the claims were tolled by Pennsylvania's "discovery rule"—a limited exception to the general rule that the statute of limitations begins to run as soon as the right to bring a suit occurs.[3] The discovery rule tolls the statute when the party does not know or reasonably could or should not have known of the injury and its cause. *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005); *see Brown v. DaVita Inc.*, No. CIV.A. 09-3892, 2011 WL 5523823, at *4 (E.D. Pa. Nov. 14, 2011) (collecting cases applying Pennsylvania law).

But the rule has its limits. The inability to draft a "perfect complaint" does not toll the statute. *Gallucci v. Phillips & Jacobs, Inc.*, 614 A.2d 284, 289 (Pa. Super Ct. 1992). Nor can a plaintiff take advantage of tolling by claiming he lacked information regarding the "specific content" of the defamatory statement, if he knew of the injury and its cause. *Id.* at 288. As the

---

[3] The parties both conceded at oral argument that whether the discovery rule applies is a legal question for the Court, not a fact question for a jury.

5

Pennsylvania Supreme Court stresses, "the salient point giving rise to [the discovery rule's] application is the *inability* of the injured, *despite the exercise of reasonable diligence*, to know that he is injured and by what cause." *Fine*, 870 A.2d at 858 (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). The exception to the time bar will not be "applied so loosely as to nullify the purpose for which a statute of limitations exists." *Brown* 2011 WL 5523823, at *3 (internal citations omitted) (cleaned up).

In his supplemental submission, Mr. Rizzo now appears to expressly concede that any slander claim is barred as untimely. He admits that he "knew or should have known on October 3, 2019 that [Mr.] Spear made false verbal statements claiming that EY was offended by him and wanted him removed." Doc. No. 24 at 8. The Court agrees.

But Mr. Rizzo maintains that the discovery rule should apply to save his libel claim because he did not have copies of the Spear emails until they were provided to him during discovery for his EEOC claim some five months later. Doc. No. 20 at 7 (using ECF pagination). However, the relevant inquiry remains when Mr. Rizzo had knowledge of the injury—whether actual or constructive. Here, again, the Complaint pleads knowledge of the alleged written defamation on October 3, 2019. And that knowledge ultimately dooms the libel claim.

Mr. Rizzo admits that, during the October 3 call with Mr. Granit, he learned that Mr. Spear had emailed upper management to alert them of the client's alleged dissatisfaction and also that he was being immediately removed from the client's account. Compl. ¶¶ 13-15. Although Mr. Rizzo was not physically in possession of the written statements between Mr. Spear, Nutanix, and EY, he knew of their existence and a proximate injury—that he was being demoted. His employment termination roughly two weeks later was further evidence of an injury. Rather than being an "ah-ha!" moment, receipt of physical copies of the Spear emails in February 2020 merely corroborates the contents of the phone call that Mr. Granit had already relayed to Mr. Rizzo in October 2019.

6

Receipt of the copies does not create knowledge when Mr. Rizzo was already aware that he was injured five months prior. The Court does not find the sequence of events as pled warrant the discovery rule to save Mr. Rizzo's libel claim.

Nor is it the case that a pending EEOC charge based on overlapping operative facts tolls the statute of limitations for a related defamation claim. To be sure, the Pennsylvania Supreme Court has not directly addressed this issue. However, district courts within this Circuit have repeatedly held that "filing a charge with the EEOC or PHRC does *not* toll" a state law tort arising from the same facts as the discrimination claims. *Brown*, 2011 WL 5523823, at *3; *see also Langan v. Proctor & Gamble Co.*, No. 3:08–cv–323, 2009 WL 1816950, at *3 (M.D. Pa. June 24, 2009) (plaintiff's PHRA claim did not toll statute of limitations for common law claim arising out of same facts).

Mr. Rizzo's defamation claim is barred by Pennsylvania's one-year statute of limitations. Because he pled knowledge of the injury at the time the allegedly defamatory statements were made, he cannot take advantage of the discovery rule to toll his claim. For this reason, the Court need not reach the remaining defense arguments.[4]

---

[4] Suffice it to say, as the Court noted to the parties at oral argument, Mr. Rizzo's defamation claim is problematic. To prove defamation, a plaintiff must establish: "(1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm to the plaintiff; (7) abuse of a conditionally privileged occasion." 42 Pa. C.S. § 8343(a).

"It is for the court to determine, in the first instance, whether the statement of which the plaintiff complained is capable of a defamatory meaning." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). As a threshold matter, the Court must consider whether the statement would "so harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (applying Pennsylvania law). The Court must also consider the context in which the alleged statement was made to determine its likely effect on the reader. *Id.* Statements that "merely annoy or embarrass" do not rise to the level of actionable defamation. *Id.* Dismissal is appropriate when the statements at issue are not capable of having a defamatory meaning. *MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1053 (Pa. 1996).

The Court is doubtful that the alleged statements were defamatory when they appear to be non-actionable opinions or characterizations by Mr. Rizzo's superiors at work. Mr. Rizzo emphasizes that

CONCLUSION

For the reasons set out in this Memorandum, the Court grants Defendants' motion to dismiss with prejudice. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

Mr. Spear's characterization of the email sent to EY suggested that he was unable to perform his job. Opinions are actionable only when "they imply the existence of undisclosed defamatory facts" *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 358 (3d Cir. 2020) (internal citation omitted). Assuming that the Spear emails are the defamatory statements, which raises additional concerns, any discussion of Mr. Rizzo was in the context of the September 26 email he admits to having sent to EY and which is included in the email chain. Read in context, Mr. Spear is sharing his reaction to Mr. Rizzo's correspondence with other Nutanix management.

Defendants also assert that they enjoy a conditional privilege to discuss the performance of the company's employees, of which Mr. Rizzo was certainly one. A "publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." *Daywalt v. Montgomery Hosp.*, 573 A.2d 1116, 1118 (Pa. Super. Ct. 1990). Pennsylvania law recognizes that "[c]ommunications among management-level persons concerning employee's job performance were necessary for the operation of the department and therefore privileged." *Maier v. Maretti*, 671 A.2d 701, 706 (Pa. Super. Ct. 1995).

When a defendant raises the defense of privilege, the burden shifts to the plaintiff to show an abuse of the conditional privilege. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). Mr. Rizzo asserts in his response in opposition that he cannot state whether defendants have abused the conditional privilege at the motion to dismiss stage. He is correct. Although the question of whether a privilege applies is one of law—and one which the Court could find is met here—"the question of whether the conditional privilege has been abused is . . . one of fact." *Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 593 (E.D. Pa. 1998). So, regardless of whether Defendants did abuse their conditional privilege, the Court need not—and cannot—resolve that issue at this juncture.

Finally, the Court rejects Defendants' argument that the complaint should be dismissed for failure to exhaust administrative remedies. Although the operative facts supporting both the defamation claim and the EEOC charge overlap, the EEOC is not tasked with adjudicating the former. Theoretically, Mr. Rizzo's defamation claim could have arisen wholly independent of any claim that would be adjudicated before the EEOC. That his charge is pending before the EEOC is immaterial to Mr. Rizzo's ability to allege defamation in a federal action. The pending charge does not redound to his benefit—it does not toll the statute of limitations on the defamation claim—but it also does not disadvantage him by forcing a delay while the EEOC considers the charge before it.

8